NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| I-MED PHARMA INC., | |
| Plaintiff, | Civil Action No. 03-3677 (DRD)(MAS) |
| v. | |
| BIOMATRIX, INC., et al, | **OPINION** |
| Defendants. | |

**SHIPP, United States Magistrate Judge**

## I. INTRODUCTION

The issue before this Court is whether I-Med ("Plaintiff") is entitled to enlarge the scope of relevant discovery to include Biomatrix, Inc., Genzyme Corporation, and Genzyme Biosurgery's ("Defendants") non-Hylashield products. Those products include Synvisc and information related to Synvisc production data, projections, reports, budgets, processes, capacities, and constraints that existed at Defendants' Canadian and New Jersey manufacturing facilities. The plaintiff also requests information on Defendants' production of all products at the Canadian and New Jersey facilities; agreements between Defendants and other companies, persons, and/or entities, relating to Synvisc, Hylashield, and/or products for the period 1994 through 2002. (Pl.'s Mot., June 29, 2007.) In addition, while Plaintiff and Defendants have submitted numerous discovery disputes[1], many of those disputes will be rendered moot by this opinion.

This action relates to Plaintiff's attempt to recover damages from Defendants. The plaintiff alleges that Defendants caused it to lose millions of dollars in profits; incur millions of dollars in

---

[1] Second Amended Joint Dispute Chart, submitted February 11, 2008.

damages, hundreds of thousands of dollars in out-of-pocket expenses, and caused the loss of good will and sales with customers. (Pl.'s Mot., Doc. 82.) The plaintiff alleges that the damage caused is due to: (1) Defendants' failure to comply with the terms of two written distribution agreements and other agreements entered into between the parties; (2) misrepresentations to Plaintiff concerning facts and circumstances surrounding the parties' agreements and Defendants' true intentions not to comply with their contractual obligations; (3) breach of fiduciary duty owed to Plaintiff; and (4) intentional, reckless, and negligent misrepresentations in the inducement of the distribution agreements and in the renewal of those agreements. (Pl.'s Reply Certification, July 23, 2007.)

## II. FACTUAL BACKGROUND

Plaintiff filed this motion to enlarge the scope of relevant discovery because it contends that the information is essential to explain Defendants' failure to produce and distribute Hylashield dry-eye products to I-Med, in violation of two distribution agreements between the parties.

In the first distributorship agreement, entered into on or around July 20, 1994 ("the 1994 Agreement"), Defendant Biomatrix granted Plaintiff the right to distribute the products known as Hylashield and Hylan Surgical Shield ("HsS"). The second distributorship agreement, entered into on or around October 4, 1995 ("the 1995 Agreement"), granted Plaintiff the right to distribute products known as Hylashield Nite and Hylashield Lite.

The plaintiff's request to expand the scope of discovery has been addressed and withdrawn in previous motions. In May 2006, Plaintiff requested discovery of the information now sought by this motion. (Pl.'s Certification ¶ 4.) In June 2006, Plaintiff deposed Defendant Biomatrix's founder and Chief Executive Officer, Dr. Endre Balazs. Based on Dr. Balazs's testimony, Plaintiff withdrew all demands for any Synvisc production discovery in September 2006 during a court conference

2

before Magistrate Judge Madeline Cox Arleo. (*Id.*) In March 2007, Plaintiff appeared before Magistrate Judge Esther Salas and reiterated that it had not changed its position from that articulated in 2006 before Judge Arleo, and that information regarding Synvisc was unnecessary. (Hr'g. Tr. 66:6-10, January 10, 2007.) In her March 20, 2007 Opinion, Judge Salas limited the scope of relevant discovery to: (1) other viscoelastic opthamological products; (2) due diligence documents related to viscoelastic products for use in the opthamological market (specifically stating that because it is not a viscoelastic product for use in the opthamological market, documents related to Synvisc were not relevant for purposes of discovery); and (3) information Defendants were seeking about Biocia. (Judge Salas's Op. 11, March 20, 2007.)

In April 2007, Plaintiff deposed Defendants' former employees whose testimony indicated that Defendants' Synvisc production was the reason Hylashield was not manufactured, in direct contradiction to Dr. Balazs's testimony. (Pl.'s Certification ¶ 23.) In May 2007, Plaintiff submitted a third set of document demands for documents concerning allocation of resources, production capacity, and scheduling of production shifts at Biomatrix's production facilities; expansion of or addition to Biomatrix's production reports and materials demonstrating the quantities of Synvisc and the Hylashield products produced in Defendants' production facilities. (Pl.'s Certification ¶ 37.)

In the instant motion, I-Med is once again seeking discovery with respect to Defendants' non-Hylashield products. Those products include Synvisc and information related to Synvisc production data, projections, reports, budgets, processes, capacities, and constraints that existed at Defendants' Canadian and New Jersey manufacturing facilities. The plaintiff also requests information on Defendants' production of all products at the Canadian and New Jersey facilities, contracts and other agreements between Defendants and other companies, persons, and/or entities, relating to Synvisc,

3

Hylashield, and/or products for the period 1994 through 2002. (Pl.'s Mot.) Plaintiff alleges that the new information, which was uncovered in April 2007, related to Synvisc production and was necessary as it provided information central to Plaintiff's case. (Pl.'s Certification ¶¶ 39 - 41.)

The issue with regard to expanding the scope of relevant discovery was brought before Judge Salas at a June 7, 2007 Status Conference. (Tr. of Status Conf., Document No. 86, July 9, 2007.) Judge Salas concluded that if she granted Plaintiff's motion for additional discovery with respect to Synvisc, discovery would be limited to information related to Synvisc. (*Id.*)

Defendants state that Plaintiff's Motion goes "far beyond that specific request [to expand discovery to include information about the production of Synvisc], seeking a variety of documents related not only to Synvisc, but other non-Hylashield products," and that accordingly, "to the extent the Motion requests discovery other than Synvisc production reports, it should be summarily denied." (Def. Opp'n at 1, n1.) Defendants further state that the Court should deny the motion to enlarge the scope of relevant discovery because " . . . Synvisc simply has no relevance . . . " to Plaintiff's claim. (*Id.* at 2.) Defendants state that expanding the scope of discovery to include Synvisc would require Genzyme to redo all of its past discovery work. (*Id.* at 14.) Defendants allege that including Synvisc would: (1) "expand discovery to nearly every nook and cranny of Biomatrix, for which Synvisc was its central product line;" (2) "enlarge Genzyme's current production by a substantial multiple of the thirteen boxes of material that Plaintiff has already received;" (3) "likely jeopardize what is now the fourth fact discovery deadline . . .", and (4) be manifestly unfair to impose such a burden on Genzyme as a result of Plaintiff's "erratic and inconsistent discovery strategies." (*Id.*)

## III. DISCUSSION

FEDERAL RULES OF CIVIL PROCEDURE (FED. R. CIV. P.) 26 defines the bounds of relevant discovery. Pursuant to subparagraph (b)(1), "parties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). As this Court has already recognized, "courts have construed this rule liberally as providing for a broad vista of discovery." *Tele-Radio Systems v. DeForest Elec., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981); *see also Evans v. Employee Benefit Plan*, 2006 WL 1644818, 4 (D.N.J. 2006)(citing *Tele-Radio Systems*). In interpreting Rule 26(b)(1), district courts must remain mindful that relevance is a broader inquiry at the discovery stage than at the trial stage. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).

While broad, discovery is not boundless. FED. R. CIV. P. 26(b)(2) vests the district court with the authority to limit the parties' pursuit of otherwise discoverable information. The Third Circuit recognized this discretionary power when it noted, "[a]lthough the scope of discovery under the Federal Rules is broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).

Questions concerning the scope of discovery are among those matters which should be almost exclusively committed to the sound discretion of the district court. *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir. 1984).

Fact discovery in this matter ended on September 28, 2007. On June 7, 2007, Plaintiff was granted leave to file a motion to enlarge the scope of relevant discovery. In the transcript of the June 7, 2007 status conference, Judge Salas invited all of the parties to formally brief Plaintiff's request to expand relevant discovery to include Synvisc, and stated that a ruling on the motion would be

5

provided. Plaintiff's brief was submitted on June 29, 2007, well before the end of fact discovery. While the theory espoused by I-Med that Synvisc production delayed the production of its Hylashield products is not new, Plaintiff contends that information supporting that theory is new.

Defendants refer to the Court's earlier ruling that information on Synvisc was not relevant to this proceeding as it was not a viscoelastic product. (Defs.' Opp'n., July 9, 2007.) However, that ruling was made before Plaintiff presented a request to the court to expand the scope of relevant discovery based on newly acquired information. As stated in Plaintiff's Reply Brief, "Genzyme will be required to produce its records regarding the production of Synvisc in Canada and in New Jersey and its sales of Synvisc during the life of the distribution agreements . . . ."

For the reasons set forth above, the Court finds that information related to Synvisc production is relevant to the case at hand. Accordingly, the Court grants Plaintiff's request to expand the scope of relevant discovery. However, this Court orders, as discussed at Judge Salas's June 7, 2007 status conference, that discovery is limited to information related to Synvisc production in New Jersey and Canada and sales of Synvisc during the period from 1994 through 2002. Information related to other products prepared by Defendants is NOT included in this Order.

Furthermore, by granting Plaintiff's motion for limited expansion of the scope of discovery to include Synvisc, the Court has mooted a number of disputes submitted in the parties' February 8, 2008 joint submission of discovery disputes. Specifically, information related to I-Med's 3rd Set of Document Requests (DR) numbered as follows:

        (1)    DR 21 & 22
        (2)    DR 23-26
        (3)    DR 28-29
        (4)    DR 32-36 & 39
        (5)    DR 45-48
        (6)    DR 51 & 52

    (7)  DR 58 & 59

These document requests include information related to Synvisc production and should be produced by Defendants.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to enlarge the scope of relevant discovery is GRANTED-IN-PART.

**SO ORDERED.**

Dated: June __9__, 2008

               _/s/ Michael A. Shipp_
               **HONORABLE MICHAEL A. SHIPP**
               **UNITED STATES MAGISTRATE JUDGE**