NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

I-MED PHARMA INC.,

    Plaintiff,

  v.

BIOMATRIX, INC., GENZYME
CORPORATION and GENZYME
BIOSURGERY, a Division of Genzyme
Corporation,

    Defendants.

---

Civ. No. 03-3677 (DRD)

**O P I N I O N**

*Appearances:*

Harvey Gilbert, Esq.
66 McCulloch Avenue
Morristown, New Jersey 07963-0340

KREISBERG & MAITLAND, LLP
By: Gary Maitland
Michael B. Parson
116 John Street, Suite 1120
New York, New York 10038

 *Attorneys for the Plaintiff*

BINGHAM MCCUTCHEN LLP
By: Jessica Boar
399 Park Avenue
New York, New York 10022-4689

By: Thane Scott
By: Justin M. O'Sullivan
By: Jennifer L. Stewart
One Federal Street
Boston, Massachusetts 02110-1726

 *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

The issue before the court is whether to uphold the Magistrate Judge's June 9, 2008 discovery order (the "Discovery Order") granting plaintiff I-Med Pharma Inc.'s ("I-Med") motion to enlarge the scope of discovery to include information about production of Synvisc in New Jersey and Canada and Synvisc sales during the period of 1994 though 2002.  Defendants Biomatrix, Inc., Genzyme Corporation and Genzyme Biosurgery, a Division of Genzyme Corporation ("Defendants") bring this appeal, contending that the Discovery Order should be vacated.

## I. BACKGROUND

I-Med commenced this civil action in July, 2003, alleging that Defendants caused it to lose millions of dollars in profits, incur millions of dollars of damages, incur hundreds of thousands of dollars of out-of-pocket expenses and caused the loss of good will and sales with customers.  I-Med alleges that these damages are due to: (1) Defendants' failure to comply with the terms of two written distribution agreements and other agreements entered into between the parties; (2) misrepresentations to I-Med concerning facts and circumstances surrounding the parties' agreements and Defendants' true intentions not to comply with their contractual obligations; (3) breach of fiduciary duty owed to I-Med; and (4) intentional, reckless and negligent misrepresentations in the inducement of the distribution agreements and renewal of those agreements.

In May, 2006, I-Med requested that the scope of discovery include information about Synvisc production in New Jersey and Canada, and Synvisc sales during the period of 1994

2

though 2002.  After deposing Biomatrix's founder and CEO, Dr. Endre Balazs, I-Med withdrew its request for Synvisc production discovery during a September, 2006, status conference before Magistrate Judge Madeline Cox Arleo.  In January, 2007, I-Med appeared before Magistrate Judge Esther Salas and reiterated that obtaining information regarding Synvisc was unnecessary. Judge Salas wrote an opinion specifying which information was relevant for purposes of discovery.  In a footnote, she stated that because Synvisc is not a viscoelastic product for use in the opthamological market, due diligence documents related to Synvisc were not relevant for purposes of discovery.

In April, 2007,  I-Med deposed Defendants' former employees, whose  testimony contradicted Dr. Balazs' testimony.  The employees stated that Defendants' inability to simultaneously manufacture Synvisc and Hylashield products was the reason Hylashield was not manufactured.  As a result of this testimony, on June 7, 2007, Judge Salas granted I-Med leave to file a motion to enlarge the scope of discovery, and on June 29, 2007, I-Med submitted a brief in which it requested that the scope of discovery be expanded to include information related to Synvisc production.

The case was transferred to Judge Shipp before Judge Salas could rule on the Motion to Enlarge.  In his June 9, 2008, opinion, Judge Shipp permitted I-Med discovery related to Synvisc production in New Jersey and Canada and sales of Synvisc from 1994 through 2002.  Judge Shipp further stated that information related to other products prepared by defendants was not relevant.

Defendants argue that Judge Shipp erred by reconsidering the issue of whether production

3

of Synvisc was relevant, having failed to apply the correct legal standard in overruling Judge Salas's decision. Defendants further argue that even if Judge Shipp was permitted to consider the Synvisc issue anew, his order should be reversed because he did not apply the balancing test as required by Federal Rule of Civil Procedure 26(b)(2).

## II. DISCUSSION

A magistrate judge's decision may be overturned only when the ruling was clearly erroneous or contrary to law. L.Civ.R.72.1(c)(1)(A).[1] The burden of showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the appeal." Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

Where an appeal seeks review of a matter within the exclusive purview of the Magistrate

---

[1] L.Civ.R.72.1(c)(1)(A) states:

> Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 10 days after the party has been served with a copy of the Magistrate Judge's order . . . . A Judge shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law.

4

Judge, such as a discovery dispute, an even more deferential standard, the "abuse of discretion standard" must be applied. Port Auth. v. Affiliated FM Ins. Co., 2001 U.S. Dist. LEXIS 7579, at *5 (D.N.J. March 29, 2001). "Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion." Id. (citing Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998); Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205, 214 (D.N.J. 1997)).

Local Civil Rule 72.1(c) provides that the Court should set aside any portion of "the Magistrate Judge's order found to be clearly erroneous or contrary to law." Although the court applies a deferential standard in reviewing decisions of magistrate judges, particularly in discovery dispute matters, the Appeal and Cross-Appeal present a question of law which must be reviewed de novo. Doe v. Hartford Life and Accident Ins. Co., 2007 U.S. Dist. LEXIS 47643 (D.N.J.).

**A. Judge Salas's Prior Ruling**: The Defendants argue that the Motion to Enlarge was really an attempt by I-Med to bypass the appeal and reconsideration process for non-dispositive discovery orders as required by Rule 72 of the Federal Rules of Civil Procedure and by District of New Jersey Local Civil Rule 7.1(i). The first question, therefore, is whether Judge Salas in fact decided the issue of whether Synvisc production and sales data was discoverable.

As stated above, I-Med had not submitted this issue to Judge Salas for consideration at the time she wrote her opinion. In her opinion, Judge Salas mentioned Synvisc only once in a footnote, and the issue had not been briefed or disputed. It is clear that Judge Salas's footnote was dictum, not a "holding" which would implicate the formal process of moving to reconsider

or appealing the earlier decision.

The Defendants skillfully argue that Judge Salas's opinion was an omnibus order intended to set the outer limits of discovery by establishing clear boundaries which include viscoelastic opthamological products and exclude all other products. Indeed, Judge Salas opened the January 10, 2007 hearing by stating that she would resolve fundamental disagreements regarding what was and was not relevant. Furthermore, in her opinion, she stated that information about Hylashield and other viscoelastic products was relevant and discoverable. However, Judge Salas did not state in the opinion that all information relating to non-viscoelastic opthamological products was irrelevant. An affirmative statement setting forth which information is discoverable cannot be read as an implication of which information is not discoverable. Although Judge Salas stated in a footnote that due diligence documents related to Synvisc were not relevant because Synvisc is not a viscoelastic opthamological product, this seems to have been an off-hand example, and not an issue in a matter "referred to a magistrate judge to hear and decide." Fed. R. Civ. P. 72. Furthermore, Judge Salas's willingness to entertain I-Med's request to enlarge the scope of discovery to include information about production of Synvisc further indicates that she did not intend for the statement made in the footnote to be binding.

Although Defendants rely on Fed. R. Civ. P. 72, the rule requires that a party file objections to a magistrate judge's order over a matter that was heard and decided within 10 days of being served a copy of the order. However, Judge Salas did not issue an order accompanying her opinion. Even if the Court were to construe her opinion as an order for purposes of satisfying Fed. R. Civ. P. 72(a), the single reference to Synvisc production would not qualify as being an

6

issue that was heard and decided because, as previously stated, in the context of her opinion and the procedural history, the reference to Synvisc production was dictum. It was therefore proper for Judge Shipp to decide anew whether information regarding production of Synvisc was relevant for purposes of discovery. Moreover, it was Judge Salas who granted the leave to file the new motion.

**B. Balancing Test**: The Defendants claim that Judge Shipp erred in not applying the balancing test to determine whether enlarging the scope of discovery to include Synvisc production information was overly burdensome. However, Judge Shipp's opinion acknowledges the Defendants' burdens and weighs them against relevance of further discovery. Judge Shipp's opinion circumscribes I-Med's right to information; it states that only information relating to Synvisc production in New Jersey and Canada and sales of Synvisc during the period from 1994 through 2002 is relevant. Finally, Judge Shipp's opinion specifically identifies which document requests must be produced. It is clear that Judge Shipp balanced the burdens of production on the Defendant against the relevance of the requested documents to the case. Therefore, he did apply the balancing test, and there is no error to reverse.

### III. CONCLUSION

For the reasons set forth above, the Defendants' Appeal will be dismissed. The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: August 19, 2008            _____